[No. 10,275.]
# EX PARTE THISTLETON.

EXERCISE OF APPELLATE JURISDICTION.—If the Constitution confers appellate jurisdiction on a Court, and there is no statute providing for a mode of taking an appeal, and the Legislature has authorized the Court to issue all writs necessary to the exercise of its powers, a case may be brought up to the Court from an inferior tribunal, by a writ of error.

WRIT OF ERROR.—A writ of error is a writ ex debito justitiæ, wherever, by reason of error, a judgment of a Court of record ought not to stand, and an appeal is not provided by statute.

COURT OF RECORD.—The City Criminal Court of the City and County of San Francisco is a Court of Record, because it has a Clerk and Bailiff, and has power to fine and imprison, although it has no seal.

WRIT OF ERROR.—A writ of error may be issued by the County Court to the City Criminal Court of the City and County of San Francisco when there is no statute providing the mode of an appeal.

METHOD OF EXERCISING APPELLATE JURISDICTION.—It would seem that if the Constitution gives a Court appellate jurisdiction, and the statute authorizes it to issue all writs necessary to the exercise of its powers, it may frame and issue an appropriate writ for the purpose of bringing up a record from an inferior Court to enable it to review alleged errors.

George Thistleton was convicted of a misdemeanor, viz., a libel, in the City Criminal Court of the City and County of San Francisco, and was, on the 27th of January, 1877, sentenced to one year's imprisonment. On the 8th day of May, 1877, he petitioned the Supreme Court to be discharged on *habeas corpus*.

The act to create the City Criminal Court of San Francisco (Stats. 1875-6, p. 829) provides that when any person who is charged with a misdemeanor in the Police Judge's Court shall demand a jury trial, that the case shall be transferred to the City Criminal Court for trial, and that all persons indicted by the Grand Jury for a misdemeanor shall be tried in said Court. A Prosecuting Attorney and Clerk were to be appointed by the Board of Supervisors for the Court, and the Chief of Police was required to assign to the Court a police officer as Bailiff.

*Clitus Barbour* and *James S. Reynolds*, for the Petitioner.

The omission of the Legislature to provide the machinery for taking appeals in these cases from the City Criminal Court to the County Court is fatal to so much of the act creating the City Criminal Court as attempts to confer jurisdiction to try

them. The act *pro tanto* is unconstitutional and void. "No person shall be deprived of liberty without due process of law." This expression of the organic law, as applied to criminal cases, means that no less than all the forms and means and solemnities for ascertaining his guilt shall be used and applied before the party accused can be condemned. (*Taylor* v. *Porter*, 4 Hill, 147.)

The definition given the phrase "due process of law," by Daniel Webster, in his argument upon the Dartmouth College case, is the one most frequently adopted by the Courts. He says: "By the law of the land is most clearly intended the general law; a law which *hears before it condemns*; which proceeds upon inquiry,· and renders judgment only after trial."

If it be necessary to the judicial determination of the guilt of the accused that an appeal should be allowed him, and he is balked of that appeal by the Legislature, and a judgment is pronounced against him from which he cannot appeal, and imprisonment ensues from such judgment, then he is deprived of liberty without due process of law. Whether an appeal is the individual right of the party or not, we maintain that it is one of the means and forms of ascertaining the guilt of the party accused, where by the constitution or the course of law an appeal is contemplated as part of the proceeding. Such is the language held by this Court in *Ex parte Hoge*, 48 Cal. 6.

When, therefore, the Legislature establishes these inferior Courts, as it may do under sec. 1 of art. 6 of the State Constitution, and invests them with judicial powers, it is required to provide for appeals from their judgments to the County Court, in all cases, by the same authority which authorizes their organization. (Art. 6, sec. 8, State Constitution.)

To make the right of a defendant complete, and to effectuate his appeal, the manner of taking it must be prescribed by law, and the duties of the inferior Courts so fixed that mandamus will compel their performance. It must not consist in the mere permission to the Appellate Court to adopt ·some mode for the exercise of its appellate jurisdiction.

The Legislature has failed to confer upon the City Criminal Court the powers necessary for the trial of indictments accord-

ing to the spirit or letter of the common law, Code, or Constitutution. These necessary powers are: That it be a Court of record; that it have terms; that it have a seal; and that it be officered by the Sheriff, District Attorney, and County Clerk.

The Constitution requires that the powers and duties of such Courts shall be fixed by law. (Art. 6, sec. 10, State Constitution.) It forbids that any person shall be deprived of liberty without due process of law. It commands that the accused shall be allowed to appear and defend; that he shall be tried by a common-law jury; that he shall have a public, speedy, and impartial trial; and that all laws of a general nature shall have a uniform operation. The City Criminal Court is without the power to try persons prosecuted by indictment in accordance with these fundamental rights. We raise no mere questions of error in its proceedings, but say it cannot proceed at all by reason of fatal defects in the law of its creation; that it cannot ascertain guilt or innocence in the manner and by the forms prescribed by law, nor by the course of the common law, and that therefore so much of the law as attempts to confer the jurisdiction is and must be held to be unconstitutional and void.

*D. J. Murphy*, against the discharge.

By the Court, McKinstry, J.:

Neither the act "to create the City Criminal Court," nor any other act of the Legislature to which we have been referred, supplies in terms a particular mode of taking an appeal from that Court to the County Court. (Acts 1875–6, p. 829.)

The point has been made by counsel for petitioner: "The omission of the Legislature to provide the machinery for taking appeals in these cases (misdemeanors) is fatal to so much of the act creating the City Criminal Court as attempts to give jurisdiction to try them."

Prior to the amendments of 1862, the Constitution read: "The Supreme Court, and each of the Justices * * * shall have power to issue writs of *habeas corpus*. They shall also have power to issue *all other writs and process necessary to the exercise of their appellate jurisdiction*." (Art. 6, sec. 4.)

Sec. 1 of the sixth article of the Constitution declares that the judicial power shall be vested in certain Courts, (there enumerated) "and in such Recorders' and other inferior Courts as the Legislature may establish in any incorporated city or town." And the eighth section of the same article gives "appellate jurisdiction" to the County Court "in all cases arising in courts held by Justices of the Peace and Recorders, and in such inferior courts as may be established in pursuance of section one of this article."

By the eighty-fifth section of the Code of Civil Procedure, the Legislature has expressly authorized the County Court, if that Court did not previously possess the capacity, "to issue all writs necessary to the exercise of its powers."

Whether, in the absence of a statute purporting to grant the power, a Court on which the Constitution has conferred certain jurisdiction would have the power by rule to establish the manner in which an individual or the people could set in motion machinery for bringing within its judicial cognizance the person of a defendant and an appropriate subject-matter, and of prosecuting a proper plaint to judgment, is a question which need not now be considered. It has never been doubted that the Legislature may authorize a Court (if, indeed, such power is not inherent in every Court of Record) to establish a *practice*, or rules for the assertion and prosecution of demands on behalf of the public or an individual which may come within its jurisdiction. The clause of the eighty-fifth section of the Code of Civil Procedure above quoted adds nothing to the jurisdiction conferred on the County Court, but provides for a means of employing a portion of that jurisdiction. As the Legislature was authorized to declare the power in the County Court to issue all writs necessary to its jurisdiction, and has so declared, that Court possesses the power to the same extent as if in terms it were conferred by the Constitution itself.

On reading the eighth section of the sixth article of the Constitution in connection with the clause of the Code of Civil Procedure, the similarity of the phraseology to that employed in the fourth section of the same article of the Constitution, defining the jurisdiction and powers of the Supreme Court, (as the

same stood prior to the amendments of 1862) is at once apparent.

And under the provision of the Constitution last referred to it has been repeatedly held that, in the absence of statutory machinery for appeal, a case may be brought to this Court by *writ of error.* (*Middleton* v. *Gould*, 5 Cal. 190; *Adams* v. *Town*, 3 Ibid. 247; *S. P. & N. R. R. Co.* v. *Hanlon*, 24 Ibid. 334.)

The Constitution of Alabama gave to the Supreme Court of that State appellate jurisdiction in *criminal cases*, with power to issue such remedial writs as might be necessary to the employment of such jurisdiction. It was held in *Lynes* v. *The State*, 5 Ala. 236—the Legislature having neglected to prescribe regulations by which the constitutional jurisdiction was to be exercised—that the record and judgment in a criminal case could be moved from the inferior Court by *writ of error.*

The writ of error, under our law, is a writ *ex debito justitiæ*, wherever, by reason of error, a judgment of *a Court of Record* ought not to stand, and an appeal is not provided by statute. We are convinced that under the Constitution and Code it may issue from the County Court to the City Criminal Court.

It is urged, however, that the last is not a Court of Record, because, although it has a Clerk and record, it has no *seal*. But this suggests too narrow a definition of the words " Courts of Record " as these words are employed in modern days, and too broad a definition, perhaps, as they were formerly used.

In England—and in some of the States—every Court which had jurisdiction to *fine and imprison* was a Court of Record, and the very erection of a new jurisdiction, with power of fine and imprisonment, made "instantly a Court of Record." (3 Blacks. Com. 24–5.) The City Criminal Court has power to fine and imprison, and is, therefore, plainly a Court of Record within the older definition.

In *Thayer* v. *Commonwealth*, the writ issued to a Justice of the Peace, and it was intimated by Shaw, C. J., (12 Mctc. 11) that it is, perhaps, impossible to decide as an abstract question whether a statutory Court—with jurisdiction in part special, and in part common law—is a Court of Record according to any ancient and established definition of those terms. The definition there given, and which has been approved by standard author-

ities, is "a judicial tribunal having attributes and exercising functions independently of the person of the magistrate designated generally to hold it, *and proceeding according to the course of the common law.*"

The foregoing implies a written record, but not a seal. On the other hand, the fact that a Court has a seal, or even that a permanent record is kept of its proceedings, does not of itself, in the modern law, stamp its character as a Court of Record. (Bouvier, "Court of Record.") The City Criminal Court, with its Clerk and Bailiff, and where the proceedings are on indictment and by trial by jury, is a *Court of Record.*

Even if we entertained doubt as to whether the writ of error is a proper mode of taking the judgment of the City Criminal Court to the County Court, we should be inclined to the opinion that—under the power conferred on the latter Court by the Code—it would be authorized, on application of the defendant, to frame and issue an appropriate writ for the purpose of bringing up the alleged errors committed by the inferior Court.

The petitioner must be remanded to custody, and it is so ordered.

Mr. Chief Justice WALLACE did not express an opinion.