[Civ. No. 6132. Third Appellate District.—May 4, 1939.]

THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants, v. NINA B. AITKEN et al., Respondents.

Ray L. Chesebro, City Attorney, S. B. Robinson, Chief Assistant City Attorney, Mark A. Hall, Assistant City Attorney, Carl A. Davis, Deputy City Attorney, and T. B. Cosgrove, Special Counsel, for Appellants.

Thomas W. Cochran, Chapman & Chapman, Anderson & Anderson and William R. Law for Respondents.

TUTTLE, J.—This is an appeal from an order denying a motion to recall and quash writs of execution, and to enter satisfaction of judgment.

Appellants brought an action in condemnation, and upon a trial being had, an interlocutory decree, upon the verdict of the jury, was entered on September 28, 1934, awarding compensation in the sum of $120,000. On October 8, 1934, appellants appealed to this court from the provision of the

decree fixing the award of compensation, and on December 4, 1935, an opinion was rendered by this court affirming the award mentioned. On February 6, 1936, the *remittitur* issued by this court in said action was duly filed in Tuolumne County. Thereafter, the total amount of said award was deposited with the clerk of the court, with an agreement that such award might be paid to respondents without prejudice to their claim for interest due thereon. On June 29, 1937, respondents caused an execution to be issued out of the Superior Court of Tuolumne County, directing the sheriff of Los Angeles County to satisfy the unpaid part of the judgment for compensation arising out of interest due on the judgment in the sum of $11,223.24, out of the personal and real property of plaintiffs. Appellants then filed a notice of motion to quash the writ of execution above mentioned, and to enter satisfaction of the judgment, upon the ground that said judgment for which the writs were issued had been paid in full, and for the further reason that the interlocutory order of condemnation did not, in express terms, provide for the payment of interest. The motion was heard upon affidavits, and thereafter denied, and this appeal is prosecuted from said order denying said motion.

The sole question to be decided upon this appeal is whether or not interest at the legal rate should be allowed upon the compensation fixed in an interlocutory decree of condemnation during the pendency of an appeal from said decree, by the condemnor, where the condemnee, during such time, has remained in possession. The contention of appellants is, first, that the proceeding in eminent domain is a special one, and that as no provision is made for the payment of such interest in title 7, part 3, of the Code of Civil Procedure, relating to eminent domain, no recovery can be had. Second: That an interlocutory decree of condemnation is merely an adjudication of the amount which plaintiffs should pay, and that it was not a judgment requiring the payment of a specific amount of money, and merely an adjudication of a conditional liability which might, or might not, become a fixed, absolute obligation; hence, it does not bear interest like an ordinary money judgment. It is also urged that as there was no change of possession during the pendency of the appeal, and as respondents were in undisturbed possession dur-

ing said period of time, they cannot have both the use of the property and interest on the award at the same time.

Before proceeding to take up the several contentions advanced by appellants, we wish to point out the general principles which should be borne in mind throughout the discussion. "In the great majority of the jurisdictions, interest is allowed as part of the damages or compensation to which one whose property has been taken under the power of eminent domain is entitled as part of the just compensation required by the Constitution." (18 Am. Jur., p. 912, sec. 272.) ▉ The right to recover interest on a judgment is given by section 22, article XX, of the Constitution of California, which reads as follows: "The rate of interest upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand, or a *judgment* rendered in any court of the state, shall be seven per cent per annum." A judgment is defined as "the final determination of the rights of the parties in an action or *proceeding*". (Code Civ. Proc., sec. 577.) It has been repeatedly held in this state, and in fact all parties here concede, 'that an interlocutory decree in condemnation is to be treated in all respects as a final determination of the rights of the parties. This court so held in the case of *Lincoln Northern R. R. Co.* v. *Wiswell*, 8 Cal. App. 578 [97 Pac. 536], the subsequent "final order of condemnation" (sec. 1253, Code Civ. Proc.), being an order *after* final judgment.

Taking up the first question raised, while it does appear that there is no specific mention made in said title 7, relating to the recovery of interest upon an award of this character, there is a reference to another provision of the Code of Civil Procedure which is highly significant. Section 1256 of said title 7 reads as follows: "Except as otherwise provided in this title, the provisions of Part 2 of this Code are applicable to, and constitute the rules of practice in the proceedings mentioned in this title." Among the provisions of part 2 of the Code of Civil Procedure, section 682 provides in part as follows: "If it (the execution), be against the property of the judgment debtor, it must require such officer to satisfy the judgment, *with interest,* out of the personal property of such debtor, and if sufficient personal property cannot be found, then out of his real property." It would thus appear that any execution issued upon an award

under the provisions of said title 7 would carry with it the right to recover interest at the legal rate.

It is secondly contended that legal interest should not be allowed upon the interlocutory judgment, for the reason that it was not one for the payment of a specific amount of money, but merely an adjudication of a conditional liability which might, or might not, become a fixed and absolute obligation. Section 1251 of the Code of Civil Procedure provides that: "The plaintiff must, within thirty days after final judgment, pay the sum assessed" (that is, the amount of compensation fixed in the interlocutory decree). Within said thirty-day period this appeal was taken. The effect of such appeal was to stay the operation of the thirty-day limitation mentioned in the statute. (*Colusa etc. R. R. Co.* v. *Superior Court,* 31 Cal. App. 746 [161 Pac. 1011].) This, in turn, stayed the execution, as no execution could issue until the thirty-day period had expired. To this extent we are in accord with appellants. We are of the opinion, however, that the provisions of section 1255a of the Code of Civil Procedure, and the construction given that section in the case of *City of Los Angeles* v. *Deacon,* 3 Cal. (2d) 641 [46 Pac. (2d) 165], lead to a conclusion which is adverse to the position which appellants have taken. That section provides, in part, as follows:

"Plaintiff may abandon the proceedings at any time after filing the complaint and before the expiration of thirty days after final judgment, by serving on defendants and filing in court a written notice of such abandonment."

In the Deacon case it was definitely held that an appeal does not stay the running of the thirty-day period mentioned in the section last quoted. The court states: "The point involved has never been passed upon directly by an appellate court in this state—it is an open question. Considered as such, we agree with the contention of G. H. Deacon Investment Co. et al. that once the thirty-day period provided in section 1255a starts to run, an appeal does not stay its operation. We are of the opinion that one of the major purposes intended by section 1255a was to compel the condemnor to decide within thirty days after the entry of the interlocutory decree whether it desires to abandon. This does not in any way deprive the condemnor of its right to appeal. When an interlocutory decree of condemnation is

entered, the condemnor, in the absence of an appeal by the condemnee, knows how much the improvement will cost. If it decides not to abandon, but decides to appeal, it may do so. If the appeal by the condemnor is unsuccessful the condemnor has lost its right to abandon, and must pay. This rule is fair and just to all concerned.'' From this it must necessarily follow that although the appeal had the effect of staying the execution, nevertheless when the time limitation mentioned in section 1255a expired, the judgment became a direct and fixed obligation, but subject to modification or reversal on appeal, as any other action. It then had the same force and effect as any other judgment for the payment of money, and the general rule with respect to the payment of interest thereon is applicable. This, in effect, is the holding in the case of *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.*, 177 Cal. 249 [170 Pac. 426], where the court said (referring to a proceeding in condemnation) :

''In such proceedings the award constitutes a judgment in favor of defendant and against the plaintiff for the amount thereof, payment of which, unless the proceedings within the time be abandoned by plaintiff, as provided in section 1255a of the Code of Civil Procedure, shall be made within thirty days after final judgment (Code Civ. Proc., sec. 1251), and in the absence of such payment of the money awarded or deposit thereof made in court, defendant may have execution to enforce the judgment as in civil cases. (Code Civ. Proc., section 1252.) *In this respect the rights of defendant are substantially identical with those of a plaintiff recovering a money judgment against a defendant in a civil action.*''

The only matter in which defendants were interested was the recovery of the amount of the judgment. Their right to *enforce* this judgment was stayed by the appeal, just as, in any ordinary damage action, execution may be stayed upon appeal. In the eyes of the law, the money was due when the thirty-day period provided in section 1255a, *supra*, expired. The mere fact that respondents were deprived of the right, during appeal, to enforce such judgment, cannot affect its legal implications and consequences, so far as interest is concerned. The plaintiffs elected to waive the right to abandon, and decided to rely upon appeal. By thus failing to abandon, within the statutory time, they in effect, conclusively bound themselves to pay the judgment in the event

that no reversible error was found on appeal. In the case of *Phillips* v. *Pease,* 39 Cal. 582, an interlocutory judgment in condemnation was held to be a "judgment" under section 144 of the Practice Act, which defines a judgment in the identical language now used in section 577 of the Code of Civil Procedure. This case further holds that interest at the legal rate should be allowed upon such judgment.

In the case of *Plum* v. *City of Kansas City,* 101 Mo. 525 [14 S. W. 657, 10 L. R. A. 371], the court, discussing the question as to whether or not a judgment in condemnation was subject to the same rule as other judgments with respect to a matter of bearing interest, said:

"Whatever the proper rule may be for their construction in this regard, under statutes making them merely tentative, or expressly or impliedly postponing their final effect, it seems measurably clear that, under such provisions of law as those now before us, they should be classified as judgments or orders for the payment of money within the meaning of the Interest Act."

In discussing the same question, the court, in *State* v. *Humes,* 34 Wash. 347 [75 Pac. 348] said: "It (a judgment in condemnation) adjudges the recovery of the money or damages. It is true the effect of the judgment when the money is paid is also to pass title to real estate, but it is none the less a judgment for the recovery of money."

The rule in the state of Michigan is set forth in the case of *Campau* v. *City of Detroit,* 225 Mich. 519 [196 N. W. 527, 32 A. L. R. 91], as follows:

"Plaintiff's contention is that confirmation by the court of the award is a judgment, and by express statutory provisions judgments draw interest at the rate of 5 per cent per annum in this state. For the city it is contended that this is a special proceeding authorized for the public welfare, not according to the course of common litigation or common law, gives the condemning municipality a year, without default after confirmation of the award, in which to raise the money and make payment, leaves the condemnee in possession, use, and enjoyment of the property condemned until paid for, and there is no provision in the charter or act it follows for adding interest to the award. That this is a judicial proceeding, and confirmation of the award by the court is a judgment, is settled law in this state. It is the result of

the exercise of judicial authority in which the court finally determines and adjudicates that the sum awarded is at that time just compensation to the owner for his private property. It is immune from collateral attack, is conclusive upon and enforceable at the instance of all parties to the proceeding, and in general ranks with judgments for all practical purposes. (*Scotten* v. *Detroit*, 106 Mich. 564 [64 N. W. 579]; *Balch* v. *Detroit*, 109 Mich. 253 [67 N. W. 122]; *Zoltowski* v. *Judge of Recorder's Court*, 112 Mich. 349 [70 N. W. 1018].) . . . When judgment was entered upon the award and no appeal taken, the rights and obligations of the parties were legally adjudicated and fully fixed. The amount of defendant's indebtedness for the land it compelled plaintiff to sell was as finally and forcibly determined as by any other judgment. Its absolute right and title to the property only awaited payment of a judgment, based on just compensation for the property at the time it was rendered. Defendant at its option could pay forthwith, or at any time thereafter within the year granted it before payment could be enforced, while plaintiff could only mark time and wait for his money. The charter and statute it follows are silent as to interest, either during or after the year of optional deferred payment. It is not disputed, and was in effect conceded at the hearing, that plaintiff would be entitled to interest after the year expired. If constitutional grounds be taken as the test, just compensation would seem to require interest on his judgment the first year after it was rendered, as well as those which follow. Looking to legislation for authority we find none providing that he shall not have interest, and the only statute we have on that subject provides without exception that judgments shall draw interest at 5 per cent from time of rendition.

"*We conclude that interest upon final judgments in proceedings of this kind is within the letter and spirit of the statute granting interest upon all judgments recovered.*"

We therefore conclude that an interlocutory judgment in condemnation, where there has been no abandonment of the proceedings by the condemnor, is not merely an adjudication of a conditional liability, but becomes a "judgment" within the meaning of section 22, article XX, of the Constitution, and that pending an appeal by the condemnor, such judgment bears interest at the legal rate from the ex-

piration of thirty days after its entry until paid. As we have stated, this is the precise situation which is found in any ordinary action for the recovery of a money judgment, and we see no valid reason why interest upon the judgment here should not be recovered as it is recovered in other cases.

Thirdly: It is earnestly contended by appellants that, as respondents have been in exclusive possession during the appeal, interest on the award should not be allowed, the theory being that during that interval respondents have received the rents, issues and profits arising from the property taken, and thus were compensated for loss of interest. There is a great diversity of authorities upon this question. "In the absence of any statutory provisions controlling the subject, the rules in respect to interest must be derived from the constitutional provision requiring just compensation to be made for the property taken. . . . As to interest on the award or judgment for compensation, some of the cases hold that it bears interest from the date of confirmation or entry, like an ordinary judgment; others, that interest should only be computed from the date of the possession by the parties condemning, or from the time when the owner can enforce payment, or from the date of the demand." (Lewis on Eminent Domain, 3d ed., sec. 742.) It would appear that our courts have differed not so much in respect to the *right to interest* as to the *time when such interest should commence,* or as to what facts or circumstances could intervene to abridge that right, such as the matter of possession by the owner. It appears that the property taken was the right to appropriate and transport the waters of certain streams flowing from Mono Lake to the city of Los Angeles for municipal purposes, and to acquire rights of way for diversion works and conduits. No facts were adduced upon the hearing of this motion, showing or tending to show, that the possession of the rights thus taken, pending the appeal, had resulted in any financial remuneration to respondents. In the absence of any such showing, we cannot indulge in the presumption that respondents received any rents, issues and profits during the period in question, from the sole fact that they were in possession. "But, whatever may be said of these more or less technical questions, the vital question is: What constitutes full compensation? Conceding that the possession remains in the landowner, it cannot be said with any degree of reason that the value of

his possession is not impaired by the judgment of damages. Possession is only one of the elements of value in land. The right to rent, the right to sell, the right to improve, are all valuable rights which must in the nature of things be affected by this relation. If so, it conclusively follows that he has not received full compensation.'' As said by the court in *Lake Koen Navigation, Res. & Irr. Co.* v. *McLain Land & Inv. Co.,* 69 Kan. 334 [76 Pac. 853] : ''In condemnation appeals the issue is, what shall be full compensation? Interest is allowed merely as a means of securing such compensation. If, upon the condemnation of land, complete deprivation does not follow at once, still, further tenure is rendered precarious. Possession may be disturbed at any time, and all property rights are exercisable under doubt and uncertainty as to their duration. As a recompense for the loss attending this embarrassed use of the land, and this qualification of dominion over it pending the payment of the condemnation money, interest may be allowed. . . . Inasmuch as the landowner has nothing to do but to receive full compensation before his land should be taken, *the question of whether the possession has been equal to interest on the award is a fact to be established affirmatively by the condemning party.''* (*North Coast R. R. Co.* v. *Aumiller,* 61 Wash. 271 [112 Pac. 384–386].) ''The best rule is that which does not arbitrarily make possession equivalent to interest, but allows interest from the date of valuation (i. e., judgment), and reduces the amount by the estimated value of possession.'' (Randolph on Eminent Domain, sec. 280), cited and followed in the Aumiller case (above). We believe that the fairest and most equitable course is followed in the foregoing cases, and therefore take the view that while interest should be allowed, notwithstanding the possession of the owner, the latter is not entitled to both interest and profits resulting from such possession, and such profits may be allowed by way of set-off against the interest, or in reduction thereof. The burden of alleging and proving that such profits were received, and the amount thereof, rests upon the condemnor, as was held in the case of *North Coast R. R. Co.* v. *Aumiller* (above). This rule was also followed in *Uniacke* v. *Chicago etc. R. R. Co.,* 67 Wis. 108 [29 N. W. 899], where the railroad company had not taken possession of the condemned property, and claimed for that reason imposition of interest on the award was inequitable.

It was there said: "The court held interest was properly allowed from the date of filing the award, and said: 'It should be observed that the burden is upon the party seeking to condemn land to show the existence of conditions which will operate to take a given case out of the general rule in respect to interest. It is not sufficient to show merely that such party has not actually taken possession of the land. The fact that it has been condemned, and is liable at any time to be so possessed, will necessarily, in most cases, seriously interfere with its beneficial use by the former owner—often entirely destroy it.' " The case of *Los Angeles* v. *Gager*, 10 Cal. App. 378 [102 Pac. 17], is not in conflict with this view. The only question there involved was whether or not the condemnee was entitled to interest, not upon a *final judgment* in condemnation, but upon the value of the land from the date of the issuance of summons to date of judgment, where the condemnee was in possession during that time. Furthermore, the Constitution (cited above), allows interest upon a judgment for the recovery of money. As we have shown, this judgment became final and fixed upon the failure to abandon within the statutory limitation. The constitutional provision quoted above makes no exception in respect to interest due on a judgment, based upon the retention of possession of property by the judgment creditor during the appeal. We cannot agree with the statement of appellants to the effect that the allowance of interest would be inequitable as to them. They made the election to appeal, as we have stated. Thus, they withheld from defendants the amount of the judgment which became absolutely due and payable upon the failure to abandon. The matter of the title and possession of the property taken no longer concerned defendants. By law those rights were taken from them. Interest upon the award is not in the nature of "additional compensation", nor does the case of *People* v. *Thompson,* 5 Cal. App. (2d) 655 [43 Pac. (2d) 600], relied upon by appellants, so hold. On the contrary, as we have seen, it is a method devised for the purpose of assuring the condemnee that he will receive the "just compensation" to which he is entitled under section 14, article I of the Constitution of California. Theoretically, it is designed to place and maintain the condemnee in the same position, at the termination of an appeal, as he was when the judgment was stayed. Under the laws and Constitution of this state re-

spondents were entitled to interest upon their judgment, at the legal rate, from and after the expiration of the thirty days from the entry thereof, as a portion of the just compensation for the taking. Such interest could, however, be offset by proof that the possession, pending appeal, was profitable to respondents. We cannot assume or arbitrarily say that such profits accrued or existed, as the record here is without proof of such facts. The burden of asserting and proving these facts was upon appellants. It follows that with such a record before it, the trial court had no alternative but to grant this motion, and thus permit the recovery by respondents of all interest due on the judgment.

Great reliance is placed by appellants upon the case of *Colusa etc. R. R. Co.* v. *Superior Court*, 31 Cal. App. 746 [161 Pac. 1011], decided by this court on October 31, 1916. There, the usual interlocutory decree in condemnation was entered upon a verdict. Within thirty days plaintiffs perfected an appeal to this court. Thereafter, an application for writ of *supersedeas* was filed in this court, wherein it was alleged that defendant had applied to the superior court for an order directing the clerk to issue an execution against the condemnor upon said judgment for the sum of $16,931.40. It was held that the appeal removed the subject-matter of the order from the jurisdiction of the lower court, and that such court was without jurisdiction to entertain the motion, and the writ was granted. The matter of interest upon the judgment was not directly involved. That case holds, as we have already stated, that the running of the thirty-day period *within which payment must be made,* was suspended by the appeal, and this, in turn, suspended the right to an execution. Any holding in that case to the effect that the appeal suspended the operation of section 1255a, *supra* (which limits the right to abandon), must be taken to have been overruled in the subsequent case of *City of Los Angeles* v. *Deacon,* discussed above. The latter case very definitely decided that an appeal does not suspend the running of the thirty-day period mentioned in said section. We have already discussed the effect of such holding, and its effect upon the finality of the judgment.

Referring to other authorities cited by counsel, we find nothing in *City of Sacramento* v. *Swanston,* 29 Cal. App. 212 [155 Pac. 101], conflicting with our views. It was there held that the requirement that the condemnor pay at-

torneys' fees upon abandonment of the proceedings, did not conflict with the constitutional requirement that laws of a general nature must have a uniform operation, because of the distinctive character of condemnation proceedings.

The remarks quoted from *McCarty* v. *Southern Pac. Co.*, 148 Cal. 211 [82 Pac. 615], to the effect that such proceedings are special and the prescribed method must be strictly pursued, had reference to proceedings in eminent domain for the construction of levees under the Swamp Land Act. The statute required such proceedings to be initiated in a particular manner, and it was held that where the statute required the petition to be presented by the state board, whereas, the petition filed and presented was by some other party, jurisdiction was not conferred upon the court to proceed in the matter.

The case of *San Francisco etc. R. Co.* v. *Leviston,* 134 Cal. 412 [66 Pac. 473], is not in point. The only question involved was as to the obligation of the condemnor to pay interest on the award of the jury and costs, *within the thirty-day period,* as a condition to obtaining a final order of condemnation. The court held that "the only condition imposed is the payment of 'the sum of money assessed within thirty days after final judgment', . . . which seems to exclude the idea of any other condition than the one specified being proper". In other words, the court recognizes the fact that by the provisions of sections 1251 and 1252 of the code, plaintiff is allowed thirty days of grace within which to pay the award and obtain the final decree of condemnation or abandon; but obviously, that rule does not conflict with the well-established conclusion that upon the expiration of those thirty days, if the award has not been paid or the proceeding abandoned, the interlocutory decree becomes a money judgment having all of the characteristics, and enforceable in the same manner, as an ordinary judgment in a civil action.

The order is affirmed.

Pullen, P. J., and Thompson, J., concurred.

Under date of May 23, 1939, the court rendered the following supplemental opinion:

THE COURT.—Our attention has been called to language in the opinion which might be construed to the effect that

legal interest should be allowed the condemnee from the date of the *taking* of the property under condemnation proceedings. Such question was not presented upon this appeal, and we do not want to be understood as holding that legal interest should be allowed prior to the entry of the interlocutory decree, as where property is taken by the state, or any agency of the state, prior to the trial and entry of such decree.